The St Paul Surety

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company
Economy Fire & Casualty Company
United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Underwriters, Inc.
Fidelity and Guaranty Insurance Company
Northern Indemnity, Inc.
Seaboard Surety Company of Canada
Afianzadora Insurgentes, S.A. de C.V.

## GENERAL AGREEMENT OF INDEMNITY

WHEREAS, the UNDERSIGNED;

✓ **Shire Corporation**

✓ **John Clark Donatelli Jr.**

✓ **Peter R. Donatelli**

GAI - Res
2-15-00
27752
Franklin 59

or any partnership, association, corporation, successor, assign, affiliate, any related entity, subsidiary and/or division of the UNDERSIGNED whether now existing or hereafter formed or acquired (hereinafter collectively called UNDERSIGNED) may from time to time request Seaboard Surety Company and/or St. Paul Fire and Marine Insurance Company and/or St. Paul Guardian Insurance Company and/or St. Paul Mercury Insurance Company and/or Economy Fire & Casualty Company and/or United States Fidelity and Guaranty Company and/or Fidelity and Guaranty Insurance Underwriters, Inc. and/or Fidelity and Guaranty Insurance Company and/or Northern Indemnity, Inc. and/or Seaboard Surety Company of Canada, and/or Afianzadora Insurgentes, S.A. de C.V., and/or any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and/or reinsurers (hereinafter collectively called SURETY) to execute as surety or guarantor, or procure the execution of, certain surety bonds, undertakings, guaranties, stipulations or other obligatory agreements (all such agreements being hereinafter collectively called BONDS); and

WHEREAS, the UNDERSIGNED by executing this Agreement represent that they have a material and beneficial interest in the obtaining of such BONDS by each of the CONTRACTORS.

NOW, THEREFORE, in consideration of the execution of any one or more such BONDS, the UNDERSIGNED, for themselves, their respective personal representatives, successors and assigns, jointly and severally, covenant and agree, with respect to all BONDS heretofore or hereafter executed for the CONTRACTOR, that:

1. This Agreement binds each UNDERSIGNED to SURETY with respect to all BONDS executed or procured for any UNDERSIGNED executing this Agreement and for any CONTRACTOR as defined below. If any BOND or BONDS shall be executed or procured for any Joint Venture to which any CONTRACTOR is or may become a party, the liability and obligations of the UNDERSIGNED to the SURETY shall be the same as if such BOND or BONDS had been executed for the CONTRACTOR acting alone, notwithstanding any agreement between or among the Joint Venturers. CONTRACTOR as used in this Agreement shall mean any UNDERSIGNED and any other person who obtains BONDS from the SURETY at the request of the UNDERSIGNED.

2. If the SURETY shall decline to execute, or procure execution of, any BOND for which application hereafter may be made, no claim shall be made against the SURETY in consequence of such declination; nor shall any claim be made against the SURETY if any executed BOND is not accepted by or on behalf of the Obligee. If the SURETY executes or procures execution of a Bid or Proposal BOND or Consent of Surety to the issuance of BONDS, it may decline to execute or procure execution of any BONDS required in connection with any award made under the proposal for which such Bid or Proposal BOND or Consent of Surety to the issuance of BONDS is given and such declination shall not diminish or alter the liability of the UNDERSIGNED with respect to such Bid or Proposal BOND or Consent of Surety.

3. This Agreement shall apply to any and all BONDS requested by the CONTRACTOR, whether or not such BONDS were executed before or following the date of this Agreement and, further, this Agreement shall apply to any and all BONDS executed, or the execution of which has been procured, by the SURETY for any CONTRACTOR, whether or not there shall be any written application therefor executed by one or more of the UNDERSIGNED.

4. The terms of this Agreement shall also inure to the benefit of the SURETY and any other surety from which the SURETY procures or has procured the execution of any such BONDS from time to time.

5. The UNDERSIGNED will pay in advance the premiums for all such BONDS executed or procured for the CONTRACTOR and any additional premiums accruing in respect thereof, in accordance with the SURETY'S Manual of rates applicable thereto.

0 5 9 8 8 1



apindem 11/15/99

6 The UNDERSIGNED will indemnify the SURETY and hold it harmless from and against all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature which the SURETY may sustain or incur by reason of, or relating to, having executed or procured the execution of any such BOND, or that may be sustained or incurred by reason of making any investigation of any matter, or prosecuting or defending any action in connection with any such BOND, or recovering any salvage or enforcing any provision of this Agreement. The UNDERSIGNED shall pay to the SURETY all money which the SURETY or its representatives may pay or cause to be paid and shall pay to the SURETY such sum as may be necessary to exonerate and hold it harmless with respect to any liability which may be asserted against the SURETY as soon as liability exists or is asserted against the SURETY, whether or not the SURETY shall have made any payment therefor In the event of any payment by the SURETY, the UNDERSIGNED further agree that in any accounting between the SURETY and the UNDERSIGNED, the SURETY shall be entitled to charge for any and all disbursements made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. As used herein, "payments made in good faith" shall be deemed to include any and all payments made by the SURETY except those made with deliberate and willful malfeasance. The SURETY, in its sole discretion, from time to time may advance funds to or for the account of any CONTRACTOR for or relating to the completion of the work under any contract in connection with which it has executed or may execute a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT), and for the discharge of obligations incurred in connection therewith or relating thereto, and such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR

7 If the SURETY shall set up a reserve to cover any contingent claim or claims, losses, costs, attorneys' fees and/or other expenses in connection with any such BOND, the UNDERSIGNED, within ten (10) days after transmittal of written demand by the SURETY, shall pay to the SURETY current funds in an amount equal to such reserve, and any subsequent increase thereof, such funds to be held by the SURETY as collateral, in addition to the indemnity afforded by this Agreement, with the right to use the same or any part thereof, at any time, in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees and disbursements or other expenses. Transmittal of written demand by the SURETY to the UNDERSIGNED shall be deemed sufficient if sent by certified mail to the UNDERSIGNED at the address given herein or last known to the SURETY. SURETY shall have no obligation to invest, or provide a return on, the collateral deposit to be made by the UNDERSIGNED hereunder. The UNDERSIGNED shall be entitled to the return of any unused portion of the collateral deposit upon termination of the liability of the SURETY on the BONDS and the performance by the UNDERSIGNED of all obligations to the SURETY under the terms of this Agreement.

8 The SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED

9. The vouchers or other evidence of payments made by the SURETY shall be *prima facie* evidence of the fact and amount of the liability of the UNDERSIGNED to the SURETY

10. All payments received for or on account of a BONDED CONTRACT shall be held as a trust fund in which the SURETY has an interest, for the payment of obligations incurred in the performance of such contract and for labor, materials, and services furnished in the prosecution of the work provided in such contract or any extension or modification thereof. Further, it is expressly understood and declared that all monies due and to become due under any such contract or contracts are trust funds, whether in the possession of the CONTRACTOR or otherwise, for payment of all such obligations in connection with any such contract or contracts for which the SURETY would be liable under any of such BONDS. It is further agreed that such trust funds inure to the benefit of the SURETY for any liability or loss it may have or sustain under any such BONDS, and this Agreement and declaration shall also constitute notice of such trust.

11 The CONTRACTOR will furnish to the SURETY such information as it may request from time to time concerning any BONDED CONTRACT, and the CONTRACTOR hereby authorizes those with whom such contracts are made to furnish to the SURETY all information concerning such contracts and the work thereunder. The SURETY from time to time until its liability with respect to all such contracts is terminated, and until it shall have been fully reimbursed for all loss and expense which it may have paid in connection therewith, may examine the books and records of the CONTRACTOR. All persons, including credit reporting agencies, having or obtaining information concerning the financial affairs and operations of the UNDERSIGNED hereby are authorized and directed to disclose such information to the SURETY upon its request, and the SURETY and every such person hereby are released and discharged of any and all claims, liability and responsibility which they or any of them might otherwise incur or be subject to for or by reason of any such disclosure, or for or by reason of the disclosure by the SURETY to others of any information obtained by it from any source whatsoever

12 (A) In the event (i) the CONTRACTOR shall breach, or default in or delay the performance of any BONDED CONTRACT; (ii) the CONTRACTOR shall fail promptly to discharge all obligations which might be claimable under any BOND executed in connection therewith or which might give rise to a lien or charge upon any unpaid contract balance or the property of an Obligee named in any such BOND; or (iii) any breach of the terms of this Agreement (hereinafter collectively referred to as "EVENT OF DEFAULT") shall occur, the UNDERSIGNED, and each of them, hereby assign and set over unto the SURETY, as of the date hereof, their right, title and interest in and to: (a) All of the deferred payments and retained percentages, and all moneys and properties that may be, and that thereafter may become, payable to the CONTRACTOR on account of, and all claims and actions and causes of action relating to, such contract, or on account of or relating to extra work or materials supplied in connection therewith, as well as all other moneys or properties of the CONTRACTOR, hereby agreeing that such money and the proceeds of such payments, properties, claims, actions and causes of action shall be the sole property of the SURETY to be credited by it upon any sum due or to become due under the terms of this Agreement, (b) All supplies, tools, plant, equipment, and materials (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used, or acquired for use, entirely or partly, in the performance of such contract, hereby agreeing that the SURETY and its authorized representatives are authorized to take possession of said supplies, tools, plant, equipment and materials and use and enjoy the title thereto and the possession thereof, and (c) All subcontracts relating to the work under such contract which have been or hereafter may be made, together with the materials embraced therein, and all surety bonds securing the performance of, or the discharge of obligations incurred in connection with, such subcontracts, hereby agreeing that the SURETY may enforce the same in the name of the CONTRACTOR, or otherwise. In addition, in any such event aforesaid, the SURETY, at its option and in its sole discretion, may take possession of all or any part of the work under any or all BONDED CONTRACTS, and at the expense of the UNDERSIGNED complete, or cause the completion of, such work, or re-let, or consent to the re-letting or completion thereof, and in such event, may invite the Obligees, and the Obligees are authorized, to declare the CONTRACTOR in default under such contracts, any provisions thereof to the contrary notwithstanding.

(B) Upon the happening of an EVENT OF DEFAULT, the UNDERSIGNED authorize and empower the SURETY, or any person or persons designated by the SURETY, to execute in the name of the CONTRACTOR any agreements deemed necessary or desirable by the SURETY to provide absolute title to the SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed; and the CONTRACTOR hereby authorizes the SURETY, or such person or persons designated by the SURETY, to take immediate possession of such funds, property, and rights, to collect such sums as may be due from the CONTRACTOR or other person, and to endorse, in the name of the CONTRACTOR, and to collect any checks, drafts, warrants and other agreements made and issued in payment of any such funds. Upon the happening of an EVENT OF DEFAULT, the SURETY shall have the right to take immediate possession of the supplies, tools, plant, equipment, and materials and to use, and consume, if necessary, the same in the performance of any BONDED CONTRACT by itself or by others. The SURETY is authorized to assert and prosecute any right or claim hereby assigned, transferred or otherwise conveyed in the name of the CONTRACTOR and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion, subject only to the requirement that it act in good faith, which shall be defined as the absence of deliberate or willful malfeasance. The SURETY may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place, without incurring any liability of any kind. The SURETY may purchase any of the property at such sale. Neither the SURETY nor the Obligees shall incur any liability to any of the UNDERSIGNED in the exercise of the rights granted by this Section 12, except for deliberate and willful malfeasance.

13. If it becomes necessary or advisable in the judgment of the SURETY to control, administer, operate or manage any or all matters connected with the performance of any BONDED CONTRACT for the purpose of attempting to minimize any loss to the SURETY, or for the purpose of discharging its obligations of suretyship, the UNDERSIGNED hereby expressly covenant and agree that such action on the part of the SURETY shall be entirely within its rights and remedies under the terms of this Agreement and as SURETY, and do hereby fully release and discharge the SURETY, in this connection, from liability for all actions taken by it or for its omissions to act, except for deliberate and willful malfeasance.

14. In any action, suit or proceeding brought by the SURETY to enforce any of the covenants of this Agreement, the SURETY shall be entitled to receive from the UNDERSIGNED the costs and expenses, including attorneys' fees, incurred by the SURETY in connection therewith, and such costs and expenses may be included in any judgment or decree rendered against the UNDERSIGNED. Failure of the SURETY to pursue any remedy against any one or more of the UNDERSIGNED shall not effect a release of or waiver of any right against any other of the UNDERSIGNED. Separate suits against one or more of the UNDERSIGNED may be brought hereunder, and the bringing of suit, or recovery of judgment against one or more of the UNDERSIGNED upon any cause of action shall not prejudice or bar the bringing of suit and the recovery of judgment on the same cause of action against any other of the UNDERSIGNED, or against any or all of the UNDERSIGNED upon other causes of action, whether theretofore or thereafter arising.

15. The UNDERSIGNED hereby waive notice of the execution of any BONDS and of the acceptance of this Agreement, and the UNDERSIGNED hereby waive all notice of any default, or any other act or acts giving rise to any claim under said BONDS, as well as notice of any and all liability of the SURETY under said BONDS, and any and all liability on their part hereunder, to the end and effect that the UNDERSIGNED shall be and continue to be liable hereunder, notwithstanding any lack of notice of any kind to which they otherwise might have been entitled and notwithstanding any defenses which they might otherwise have been entitled to assert with respect to any claims under the BONDS. The SURETY may, without notice to or knowledge of the UNDERSIGNED, assent to any change in such BONDS, and/or contracts referred to therein, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and assent to or take any assignment or assignments, execute or consent to the execution of any continuations, extensions or renewals of the BONDS and execute any substitute or substitutes therefor, with the same or different conditions, provisions and Obligees and with the same or larger or smaller penalties, and the UNDERSIGNED shall remain bound under the terms of this Agreement even though any such assent by the SURETY does or might substantially increase the liability of the SURETY and the UNDERSIGNED. The UNDERSIGNED waive notice of any act, fact or information coming to the notice or knowledge of the SURETY concerning or affecting its rights or liability under any such BOND or BONDS, or the UNDERSIGNED'S rights or liabilities hereunder.

16. If the execution of this Agreement by any of the UNDERSIGNED shall be invalid for any reason, or if any of the UNDERSIGNED shall be released from his obligations hereunder, the terms and conditions hereof shall nevertheless be binding upon and continue in full force and effect as to the rest of the UNDERSIGNED. Nor shall it be a defense to any claim by the SURETY hereunder that it was to have procured additional indemnity or security, or that it has procured additional indemnity or security, or that it has released other indemnity or security in respect of any such BOND or BONDS.

17. If any provision or provisions of this Agreement be void or unenforceable under the laws of any place governing its construction or enforcement, this Agreement shall not be void or vitiated thereby but shall be construed and enforced with the same effect as though such provision or provisions were omitted. All rights and remedies of the SURETY under this Agreement shall be cumulative, and the exercise of or failure to exercise any particular right or remedy at any time shall not be considered to be an election of remedy or a waiver of any other right or remedy. The rights, powers and remedies afforded the SURETY by the terms of this Agreement are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the SURETY may have or acquire against the UNDERSIGNED or others whether by the terms of any other agreement or by operation of law.

18. This Agreement constitutes both a security agreement to the SURETY and also a financing statement, in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of this Agreement shall be solely at the option of the SURETY, and may be filed by the SURETY without in any way subrogating, restricting or limiting the rights of the SURETY under this Agreement, under law or in equity. The failure to file this Agreement shall not release or excuse any of the obligations of the CONTRACTOR or UNDERSIGNED under this Agreement. The SURETY may add schedules to this Agreement, describing specific items of security covered by this Agreement. For the purpose of recording this Agreement, a photocopy acknowledged before a Notary Public to be a true copy hereof shall be regarded as an original. The SURETY, when recording this Agreement, may also prepare, execute, and file a UCC-1 form pursuant to the power of attorney granted to the SURETY under this Agreement

19. The UNDERSIGNED hereby irrevocably constitute and appoint SURETY as their true and lawful attorney with the right, but not the obligation, to exercise all of the rights of the UNDERSIGNED assigned, transferred and conveyed to the SURETY in this Agreement; hereby giving and granting to the SURETY full power and authority to make, execute, endorse and deliver any agreements for the full protection intended to be given to the SURETY hereunder as the UNDERSIGNED might or could do

20. The UNDERSIGNED shall have no rights of indemnity or rights to recovery of any monies loaned by any of the UNDERSIGNED to any other of the UNDERSIGNED until all of the UNDERSIGNED'S obligations to the SURETY under this Agreement have been satisfied in full.

21. As used in this Agreement, the singular includes the plural, and the plural the singular, and the masculine pronoun shall be read as feminine or neuter, as circumstances require; and the word "person" shall mean and include individuals, partnerships, corporations and any other form of legal entity and/or association. This Agreement may be executed in several counterparts, each of which shall be an original and all of which together shall constitute one agreement.

22. Except as hereinafter in this paragraph provided, any of the UNDERSIGNED may, upon written notice by registered mail to St Paul Surety, 6225 Centennial Way, Baltimore, MD, 21209-3653, Mailstop LB22, to be effective not less than twenty (20) days after receipt, limit his obligations under this Agreement to BONDS executed by the SURETY for the CONTRACTOR prior to the effective date of such notice, provided, however, that such notice shall not be effective with respect to any BOND or BONDS executed after such date (a) upon the award of a contract to the CONTRACTOR on a bid or proposal in respect of which the SURETY has executed and delivered a bid or proposal bond prior to such date, or (b) which the SURETY has become committed to execute prior to such date, or (c) in connection with any claim, lien, litigation, or other matter involving or relating to any BOND or BONDS executed prior to such date or thereafter executed as hereinbefore in (a) or (b) provided. Such limitation of the obligations of any of the UNDERSIGNED shall not operate to limit the obligations of, or release, the rest of the UNDERSIGNED whether or not they have notice or knowledge thereof.

23. The rights and remedies afforded the SURETY by the terms of this Agreement may not be waived or modified unless agreed to in a writing executed by the SURETY. There have been no oral or other agreements as a condition precedent or inducement to the execution of this Agreement by any of the UNDERSIGNED

24. Except as permitted by SURETY through written consent, the UNDERSIGNED shall not, while any BOND or BONDS shall be outstanding and shall not have been released or discharged to the SURETY'S satisfaction, create any encumbrance affecting or diminishing in any way the rights of the SURETY as set forth in Section 12 of this Agreement and the SURETY'S priority with respect to such rights

Dated this 15 day of February 2000

**THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.**

INSTRUCTIONS

*If a CONTRACTOR or any UNDERSIGNED is a CORPORATION, the corporate name should be set forth in full. The signature, printed name and title of the officer executing for the CORPORATION should be set out immediately below. The signature of the corporate officer should be attested to by the corporate secretary or other corporate officer. Also, a CORPORATION should attach a board of director resolution ratifying the officer's execution of this Agreement. If a PARTNERSHIP, the firm name should be set forth in full, with the signature(s) of the partner(s) executing in its behalf set out immediately below. EACH PARTNER should sign as an UNDERSIGNED. The address and Tax Identification Number or Social Security Number of each UNDERSIGNED should be entered in the spaces provided.*

*Failure to satisfy any or all of the instructions concerning execution of this Agreement shall not be deemed to be a waiver of any rights of the SURETY under this Agreement nor result in this Agreement being deemed void or otherwise invalid*

**SIGNATURE OF ALL INDEMNITORS REQUIRED**
**SEE ATTACHED SIGNATURE PAGE(S)**

# GENERAL AGREEMENT OF INDEMNITY
Signature Page

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY DATED 2/15/00

ATTEST(S):

By: Laura Gammino (signature)
(Signature)
Laura Gammino
(Print or Type Name and Title)

CORPORATE INDEMNITOR(S):

Shire Corporation
(Company Name)
By: (signature) (SEAL)
(Signature)
John Clark Donatelli, Jr. President
(Print or Type Name and Title)
Address: 3 Terminal Road, Providence, RI
02905
Tax I.D. 05-483368

By: ______________________
(Signature)
______________________
(Print or Type Name and Title)

______________________
(Company Name)
By: ______________________ (SEAL)
(Signature)
______________________
(Print or Type Name and Title)
Address: ______________________
______________________
Tax I.D. ______________________

By: ______________________
(Signature)
______________________
(Print or Type Name and Title)

______________________
(Company Name)
By: ______________________ (SEAL)
(Signature)
______________________
(Print or Type Name and Title)
Address: ______________________
______________________
Tax I.D ______________________

By: ______________________
(Signature)
______________________
(Print or Type Name and Title)

______________________
(Company Name)
By: ______________________ (SEAL)
(Signature)
______________________
(Print or Type Name and Title)
Address: ______________________
______________________
Tax I.D. ______________________

By: ______________________
(Signature)
______________________
(Print or Type Name and Title)

______________________
(Company Name)
By: ______________________ (SEAL)
(Signature)
______________________
(Print or Type Name and Title)
Address: ______________________
______________________
Tax I.D. ______________________

GENERAL AGREEMENT OF INDEMNITY

Signature Page

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY DATED2/15/00.

WITNESS(ES):

/ Hayley DiRaimo.
(Signature)
Hayley DiRaimo
(Print or Type Name)
Address: 54 Potter Street.
Cranston, RI 02910

INDIVIDUAL INDEMNITOR(S):

/ [illegible] (SEAL)
(Signature)
John Clark Donatelli, Jr.
(Print or Type Name)
Address: 550 Ocean Road, Narragansett, RI
02882
Social Security No. 038504167

WITNESS(ES):

/ Hayley DiRaimo.
(Signature)
Hayley DiRaimo.
(Print or Type Name)
Address: 54 Potter Street.
Cranston, RI 02910

INDIVIDUAL INDEMNITOR(S):

/ [illegible] (SEAL)
(Signature)
Peter R. Donatelli
(Print or Type Name)
Address: 550 Ocean Road, Narragansett, RI
02882
Social Security No. 038602596

(Signature)
(Print or Type Name)
Address:

(SEAL)
(Signature)
(Print or Type Name)
Address:
Social Security No.

(Signature)
(Print or Type Name)
Address:

(SEAL)
(Signature)
(Print or Type Name)
Address:
Social Security No.

(Signature)
(Print or Type Name)
Address:

(SEAL)
(Signature)
(Print or Type Name)
Address:
Social Security No.

The St Paul
Surety

**GENERAL AGREEMENT OF INDEMNITY**
**RESOLUTION AND CERTIFICATION**

WHEREAS, the President and Clerk of Shire Corporation ("Corporation") have executed a certain GENERAL AGREEMENT OF INDEMNITY, a copy of which is attached hereto and made a part hereof, in favor of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Economy Fire & Casualty Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Underwriters, Inc., Fidelity and Guaranty Insurance Company, Northern Indemnity, Inc., Seaboard Surety Company of Canada, Afianzadora Insurgentes, S.A. de C.V. and all affiliated, associated, and subsidiary companies thereof, now existing or hereafter created, assumed or otherwise acquired, their successors and assigns, hereinafter referred to collectively as "SURETY," protecting it in connection with its assuming suretyship as more fully described therein, said GENERAL AGREEMENT OF INDEMNITY having been read at a meeting on the 15th day of February, 2000, and fully considered and approved by the directors present; and

WHEREAS, the said GENERAL AGREEMENT OF INDEMNITY has been accepted by SURETY upon the warranty of the said officers that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY

NOW, THEREFORE, BE IT RESOLVED that the said officers of this Corporation were authorized as of the 15th day of February, 2000, and continue to be authorized, to execute on behalf of this Corporation the said GENERAL AGREEMENT OF INDEMNITY, and that the acts of said officers of this Corporation who have already executed said GENERAL AGREEMENT OF INDEMNITY are hereby unanimously ratified and confirmed as the acts of this Corporation.

BE IT FURTHER RESOLVED that the aforesaid warranty that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY be, and it is hereby, ratified and confirmed as the warranty of this Corporation.

I hereby certify that I am Clerk of Shire Corporation that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the 15th day of February, 2000, in the office of the said Corporation, at which meeting a quorum of the Directors was present.

IN WITNESS WHEREOF I have hereunto set my hand this 15th day of February, 2000.

Laura Gammino (SEAL)
(Signature)

Laura Gammino, Clerk
(Print or Type Name and Title)



rvised 11/1/99

** TOTAL PAGE.08 **